FILED
2014 FEB 18 PM 2:44

CLERK...
SOUTHERN...

BY_____ DW _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. '14 CR 0387 MMA |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 371 - Conspiracy to Commit Offenses Against the United States |
| RAVNEET SINGH (1), ELECTIONMALL, INC. (2), MARCO POLO CORTES (3), | |
| Defendants. | |

The grand jury charges:

Introductory Allegations

1. The "Foreign National" was a wealthy businessman with residences in California. In addition, the Foreign National was a citizen of Mexico, and not a citizen of the United States, and had never applied for, or obtained, legal permanent resident status in the United States. As a result, the Foreign National could not lawfully make donations, contributions or expenditures in connection with any local, state or federal election.

//

//

TCP:lml:San Diego
2/18/14

2. Defendant RAVNEET SINGH ("RAVNEET SINGH") was the President of defendant ElectionMall, Inc. ("ELECTIONMALL"), a corporation that specialized in providing social media services to political campaigns throughout the world.

3. Defendant MARCO POLO CORTES ("MARCO POLO CORTES") was a San Diego-based lobbyist.

4. During the 2012 primary election cycle, Candidate 1 ran for the office of Mayor of San Diego, California; during the 2012 primary and general election cycles, Candidate 2 ran for federal office; and also during the 2012 primary and general election cycles, Candidate 3 ran for the office of Mayor of San Diego, California.

5. The Federal Bureau of Investigation ("FBI"), which is an agency of the United States, is responsible for investigating contributions, donations, and expenditures made by foreign nationals in connection with federal, state, and local elections in the United States.

Count 1

(Conspiracy - 18 U.S.C. § 371)

6. Introductory Allegations 1-5 of this Indictment are realleged and incorporated by reference.

7. Beginning on a date unknown, but no later than 2011, and continuing through December 2013, in the Southern District of California and elsewhere, defendants RAVNEET SINGH, ELECTIONMALL, MARCO POLO CORTES and others conspired to:

    a. Knowingly and willfully make, directly and indirectly, contributions and donations by the Foreign National in connection with federal and local elections, aggregating $25,000 and more during a calendar year, in

2

1              violation of Title 2, United States Code, Sections 437g(d)(1)(A)(i) and 441e(a)(1)(A);

b. Knowingly and willfully make, directly and indirectly, expenditures, independent expenditures, and disbursements for electioneering communications by the Foreign National in connection with federal and local elections, aggregating $25,000 and more during a calendar year, in violation of Title 2, United States Code, Sections 437g(d)(1)(A)(i) and 441e(a)(1)(C);

c. Knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating $25,000 and more during a calendar year, in violation of Title 2, United States Code, Sections 437g(d)(1)(A)(i) and 441f; and

d. Knowingly falsify a record with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1519;

all in violation of Title 18, United States Code, Section 371.

<u>Manner and Means of the Conspiracy</u>

8. In furtherance of this conspiracy, and to effect its objects, defendants RAVNEET SINGH, ELECTIONMALL, MARCO POLO CORTES and others utilized the following manner and means:

a. The Foreign National would decide which candidate for elective office he wished to support.

//
//

| | | |
|---|---|---|
| 1 | b. | Knowing that he could not lawfully contribute to these candidates' campaigns, the Foreign National consulted with RAVNEET SINGH, MARCO POLO CORTES, and others, who helped design methods to enable the Foreign National to make donations, contributions and expenditures in secret. |
| 7 | c. | On some occasions, the Foreign National would enlist the "Straw Donor," a La Jolla-based businessman, to serve as a conduit for large donations. After directing the Straw Donor to write checks in favor of certain campaigns, the Foreign National would reimburse him. |
| 13 | d. | To facilitate these illegal contributions, MARCO POLO CORTES would act as an intermediary, coordinating between the Foreign National and various campaign staff. |
| 17 | e. | Furthermore, the Foreign National, RAVNEET SINGH and MARCO POLO CORTES would arrange for ELECTIONMALL to perform costly services in favor of candidates for elective office. The Foreign National would finance these services, transmitting payment from a Mexico-based company to ELECTIONMALL. To maintain the secrecy of these in-kind contributions, the coconspirators would ensure that they remained unreported in any public filings. |

//
//
//
b. Knowing that he could not lawfully contribute to these candidates' campaigns, the Foreign National consulted with RAVNEET SINGH, MARCO POLO CORTES, and others, who helped design methods to enable the Foreign National to make donations, contributions and expenditures in secret.

c. On some occasions, the Foreign National would enlist the "Straw Donor," a La Jolla-based businessman, to serve as a conduit for large donations. After directing the Straw Donor to write checks in favor of certain campaigns, the Foreign National would reimburse him.

d. To facilitate these illegal contributions, MARCO POLO CORTES would act as an intermediary, coordinating between the Foreign National and various campaign staff.

e. Furthermore, the Foreign National, RAVNEET SINGH and MARCO POLO CORTES would arrange for ELECTIONMALL to perform costly services in favor of candidates for elective office. The Foreign National would finance these services, transmitting payment from a Mexico-based company to ELECTIONMALL. To maintain the secrecy of these in-kind contributions, the coconspirators would ensure that they remained unreported in any public filings.

//
//
//

Overt Acts

9. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   a. On about March 13, 2012, RAVNEET SINGH caused an employee of ELECTIONMALL to transmit to the Foreign National an invoice reflecting in-kind contributions to Candidate 1 for the purpose of obtaining the Foreign National's illegal campaign financing.

   b. On about June 13, 2012, in response to a coconspirator's email, RAVNEET SINGH reminded the coconspirator to be discreet when discussing their unlawful scheme, writing in an email: "I am not responding to this email. Because of the legal ramifications. Please talk to me . . . in person."

   c. On about August 21, 2012, MARCO POLO CORTES received, and then forwarded to a coconspirator, an email from a representative of Candidate 2 that included a link to the Federal Election Commission's rules governing the prohibition against contributions by foreign nationals – for the purpose of helping the coconspirators circumvent these very rules.

   d. In about October 2012, MARCO POLO CORTES traveled to the Foreign National's residence to help decide whether, and how, to contribute to Candidate 3's campaign.

//

//

e. In about November 2012, RAVNEET SINGH, MARCO POLO CORTES and another coconspirator created a "war room" within the campaign offices of Candidate 3, for the purpose of making unreported in-kind contributions financed by the Foreign National.

DATED: February 18, 2014.

A TRUE BILL: 

_____
Foreperson

CINDY M. CIPRIANI
Acting United States Attorney

By: _____
TIMOTHY C. PERRY
Assistant U.S. Attorney

6